```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
GOLDEN HORN SHIPPING CO. LTD.,      :   14 Civ. 2168 (JPO) (JCF)
                                    :
           Plaintiff,               :       MEMORANDUM
                                    :       AND  ORDER
     - against -                    :
                                    :
VOLANS SHIPPING COMPANY LIMITED     :
and NORVIK BANKA,                   :
                                    :
           Defendants.              :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

In this admiralty case, plaintiff Golden Horn Shipping Co. ("Golden Horn") seeks to amend its complaint to allege a claim for intentional interference with contract against defendant JSC Norvik Banka (sued as "Norvik Banka" and referred to hereafter as "Norvik"). In addition, Golden Horn requests that certain Norvik funds, currently held by garnishee Deutsche Bank Trust Company Americas ("Deutsche Bank") and restrained pursuant to a Writ of Attachment and Garnishment, be deposited into the registry of the Court. Both motions are denied.

Background

The operative complaint[1] alleges that Golden Horn, a Russian entity, and Norvik, a Latvian company, negotiated agreements

---

[1] The allegations cited from the current complaint are also included in Golden Horn's proposed amended complaint, although not always in the same numbered paragraph.

constituting a bareboat charter between Golden Horn and Norvik's subsidiary (and alleged alter ego), defendant Volans Shipping Company ("Volans"), a Belizean entity. Golden Horn Shipping Co. v. Volans Shipping Co., No. 14 Civ. 2168, 2014 WL 5778535, at *1 (S.D.N.Y. Nov. 6, 2014); (Complaint, ¶¶ 4-5, 7-8, 12, 15, 17). The agreement allowed Golden Horn to use Volans' vessel M.V. Apus (the "Vessel") to "transport frozen fish in the Sea of Okhotsk and the Bering Sea."  Golden Horn Shipping Co., 2014 WL 5778535, at *1. But the Vessel was laid up in a port in Lithuania for mechanical repairs, causing the defendants to miss the initial delivery date, as well as subsequent revised deadlines.  Id.; (Complaint, ¶¶ 41-42, 44-48). Approximately five months after the original delivery date, Norvik informed Golden Horn that it had delivered the Vessel to another shipping company.  Golden Horn Shipping Co., 2014 WL 5778535, at *1.  Three months later, in March 2014, Golden Horn filed this action alleging breach of the charter agreement, and it served a writ of attachment in the amount of $3,960,693.20 pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). Id.  In November 2014, the Honorable J. Paul Oetken, U.S.D.J., denied Norvik's motion to vacate the attachment.  Golden Horn Shipping Co., 2014 WL 5778535, at *6.

Golden Horn filed its motion to amend in January 2015.  The

proposed amended complaint adds allegations that, despite knowing about the agreements between Golden Horn and Volans, Norvik induced Volans to charter the Vessel to Novell Limited ("Novell") and then sell it to Juno Shipping Company ("Juno") (with transfer to occur after the Novell charter was completed). (Proposed Amended Verified Complaint ("Proposed Complaint"), attached as Exh. A to Declaration of Owen F. Duffy dated Jan. 8, 2015, ¶¶ 93, 106-109). Volans was therefore unable to deliver the Vessel to Golden Horn, causing the plaintiff to incur damages. (Proposed Complaint, ¶¶ 110, 116-122).

Golden Horn has also filed a motion pursuant to Rule 67 of the Federal Rules of Civil Procedure and Rule E.4 of the Local Admiralty and Maritime Rules for the Southern District of New York ("Local Admiralty Rules") to compel the deposit of the attached funds, currently held by Deutsche Bank, into the Court's registry.

Discussion

    A.   Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 603-04 (2d Cir. 2005). This is a "permissive standard [] consistent with [a] strong preference for

resolving disputes on the merits." <u>Williams v. Citigroup Inc.</u>, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted); <u>MHANY Management Inc. v. County of Nassau</u>, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) ("Amendments are generally favored because they tend to facilitate a proper decision on the merits." (internal quotation marks omitted)). Motions to amend should therefore be denied only for good reason, such as undue delay, bad faith or dilatory motive, undue prejudice to the non-moving party, or futility. <u>See</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007) (citing <u>Foman</u>, 371 U.S. at 182).

Appropriately, Norvik does not allege undue delay, bad faith, or prejudice, as any challenge based on these factors would fail for the reasons set out in Golden Horn's opening brief. (Memorandum of Law in Support of the Plaintiff's Motion for Leave to File a First Amended Complaint ("Pl. Memo.") at 4-6). The sole argument is that amendment would be futile. (Memorandum of Law of Defendant JSC Norvik Banka in Opposition to Plaintiff's Motion for Leave to File a First Amended Complaint ("Def. Memo.") at 4).

Leave to amend may be denied as futile when the pleading would not survive a motion to dismiss. <u>See</u> <u>AEP Energy Services Gas Holding Co. v. Bank of America, N.A.</u>, 626 F.3d 699, 726 (2d Cir. 2010); <u>Slay v. Target Corp.</u>, No. 11 Civ. 2704, 2011 WL 3278918, at *2 (S.D.N.Y. July 20, 2011) ("Futility generally turns on whether

4

the proposed amended pleading states a viable claim."); Penn Group, LLC v. Slater, No. 07 Civ. 729, 2007 WL 2020099, at *4 (S.D.N.Y. June 13, 2007). Under this standard, the proper inquiry "is not whether a [moving party] will ultimately prevail but whether [that party] is entitled to offer evidence to support the claims.'" Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor. DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 110-11 (2d Cir. 2010).

Here, amendment would be futile because the tort claim is not an admiralty claim, and therefore the Supplemental Rule B attachment does not provide personal jurisdiction over Norvik for the purposes of the proposed claim.

    1.   <u>Admiralty Jurisdiction</u>

The federal courts have exclusive jurisdiction over civil cases in admiralty. 28 U.S.C. § 1333(1); Foremost Insurance Co. v. Richardson, 457 U.S. 668, 670 (1982).

> [A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved[] to determine

>   whether the incident has a potentially disruptive impact
>   on maritime commerce. Second, a court must determine
>   whether the general character of the activity giving rise
>   to the incident shows a substantial relationship to
>   traditional maritime activity.[2]

Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995) ("Grubart") (internal quotation marks and citations omitted). Here, the tort did not occur on navigable water, nor was the claimed injury caused by a vessel on navigable water. Rather, the alleged tort occurred because Norvik induced Volans to charter the Vessel to Novell and thereafter to sell it to Juno.

Golden Horn argues that the "locality test" has been undermined in a trio of Supreme Court cases -- Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972), Foremost Insurance, 457 U.S. 668, and Sisson v. Ruby, 497 U.S. 358 (1990) --

---

[2] In contrast, the test for admiralty jurisdiction over a contract claim focuses on the contract's subject matter:

>   To ascertain whether a contract is a maritime one, we
>   cannot look to whether a ship or other vessel was
>   involved in the dispute, as we would in a putative
>   maritime tort case. Nor can we simply look to the place
>   of the contract's formation or performance. Instead,
>   the answer "depends upon . . . the nature and character
>   of the contract," and the true criterion is whether it
>   has "reference to maritime service or maritime
>   transactions."

Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 23-24 (2004) (alteration in original) (internal citations omitted) (quoting North Pacific Steamship Co. v. Hall Brothers Marine Railway & Shipbuilding Co., 249 U.S. 119, 125 (1919)).

so that admiralty jurisdiction is appropriate in any case where the effects of a tort are felt on navigable waters. (Memorandum of Law in Reply to JSC Norvik Banka's Opposition to the Motion for Leave to File a First Amended Complaint ("Motion to Amend Reply") at 2-4).  Prior to Executive Jet, the jurisdictional analysis in admiralty cases focused almost exclusively on the "locality of the wrong." Executive Jet, 409 U.S. at 253.  That case recognized that "maritime locality alone is not a sufficient predicate for admiralty jurisdiction." Id. at 261; Foremost Insurance, 457 U.S. at 673-74 (noting that, although Executive Jet focused on aviation torts, its reasoning applies outside that context).  Foremost Insurance and Sisson refined the analysis.  But they did not, as the plaintiff contends, eviscerate the locality test.  Rather, as Grubart -- decided five years after Sisson -- demonstrates, admiralty jurisdiction continues to require either that the tort occur on navigable water or that the injury be caused by a vessel on navigable water.  See Western Bulk Carriers KS v. Centauri Shipping Ltd., No. 11 Civ. 5952, 2013 WL 1385212, at *4 (S.D.N.Y. March 11, 2013) ("Under the Grubart test, Plaintiff's wrongful attachment clearly falls outside the scope of admiralty jurisdiction.  The allegedly tortious conduct -- Defendant's misrepresentation . . . during the Rule B proceedings -- neither occurred on navigable waters nor was caused by a vessel on such

waters."); Novoship (UK) Ltd. v. Ruperti, 545 F. Supp. 2d 328, 332 n.1 (S.D.N.Y. 2008) ("[I]t may be noted that the 'connection' test appears not to have supplanted, in whole or in part, the 'location' test, but rather is simply a policy-based filter that allows the courts flexibility in screening out unusual fact situations that are not maritime in nature, but happen to occur in navigable waters." (internal quotation marks omitted)); see also 1 Admiralty & Maritime Law § 3-5 (5th ed.) ("The first aspect of the locality test is that the incident must have occurred on 'navigable waters' as that term is defined for purposes of admiralty jurisdiction.").

To be sure, the First Circuit, looking to certain cases from this District pre-dating Executive Jet, recognizes an exception to the locality test where the impact of a tort is felt on navigable waters. Carroll v. Protection Maritime Insurance Co., 512 F.2d 4, 6-9 (1st Cir. 1975) (discussing, among other cases, The Poznan, 276 F. 418 (S.D.N.Y. 1921), and Cocotos Steamship of Panama S.A. v. Sociedad Maritima Victoria S.A. Panama, 146 F.Supp. 540 (S.D.N.Y. 1956)). But that test has not been adopted in this jurisdiction and, as the Ninth Circuit observed in J. Lauritzen A/S v. Dashwood Shipping, Ltd., "[t]he strong weight of the case law . . . [establishes] that the traditional inquiry of locality continues to control." 65 F.3d 139, 143 (9th Cir. 1995); see also Kuehne & Nagel (AG & Co.) v. Geosource, Inc., 874 F.2d 283, 289 (5th Cir.

1989) (stating that "[a] party to a contract with strong maritime implications still must satisfy Executive Jet's situs requirement when seeking to predicate jurisdiction on a maritime tort" and rejecting Carroll's impact test); Abbud v. City of New York, No. 96 Civ. 0521, 1997 WL 633463, at *5 (S.D.N.Y. Oct. 10, 1997) (citing J. Lauritzen for the proposition that "if the tort did not occur on navigable water and the injury was not caused by a vessel on navigable water, then maritime law does not apply"); Overseas Private Investment Corp. v. Industria de Pesca, N.A., Inc., 920 F. Supp. 207, 212 (D.D.C. 1996) (following J. Lauritzen and rejecting Carroll's impact test). Whatever the weaknesses of the locality test, see Carroll, 512 F.2d at 6, I am not free to disregard it. Thus, the proposed claim is not within the Court's admiralty jurisdiction.

### 3. Personal Jurisdiction

Supplemental Rule B, which allows the attachment of property owned by the defendant in an admiralty claim, "serve[s] the dual purpose of obtaining personal jurisdiction over an absent defendant and securing collateral for a potential judgment in plaintiff's favor." Arctic Ocean International, Ltd. v. High Seas Shipping Ltd., 622 F. Supp. 2d 46, 49 (S.D.N.Y. 2009). "Because, historically, maritime parties are peripatetic and often have transitory assets, 'the traditional policy underlying maritime

attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.'" Id. (quoting Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 443 (2d Cir. 2006), overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009)). The jurisdiction attained by a Supplemental Rule B attachment

> is quasi in rem, rather than in personam or in rem. In Rule B attachment proceedings, jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant has an interest. Because of the requirement that the defendant not be "found" within the district where the action is brought, Rule B contemplates that a court will lack in personam jurisdiction over the defendant when it orders that a writ of attachment be issued. In such a proceeding, the court's coercive authority is coterminous with the scope of its jurisdiction, and limited to the extent of the defendant's interest in the attached property; that authority does not extend to the exercise of in personam jurisdiction over a Rule B defendant.

Shipping Corp. of India, 585 F.3d at 69 n.12 (citations omitted). Here, the Supplemental Rule B attachment provides personal jurisdiction over Norvik for the purposes of the breach of contract claim because that claim falls within the Court's admiralty jurisdiction. See Golden Horn, 2014 WL 5778535, at *1 ("Norvik [Banka] concedes that the [contractual alter ego] claim properly sounds in admiralty."). However, because the proposed tort claim

10

does not sound in admiralty, personal jurisdiction over Norvik for this claim must rely on a jurisdictional hook independent of the quasi in rem jurisdiction derived from the attachment. See, e.g., Shipping Corp. of India, 585 F.3d at 69 n.12.  And, as the attachment was proper only because the court lacked in personam jurisdiction over Norvik, see, e.g., First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008) (attachment under Supplemental Rule B appropriate only where defendant is neither subject to personal jurisdiction nor amendable to service of process within the forum district), it follows that the Court does not have personal jurisdiction over the company for the purposes of the tort claim.

The plaintiff asserts that Norvik's argument "is easily disposed of" by recourse to Supplemental Rule E(8).  (Motion to Amend Reply at 9).  That rule

> provides that "[a]n appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim," in which case the appearance "is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served."

China National Chartering Corp. v. Pactrans Air & Sea, Inc., 882 F. Supp. 2d 579, 593-94 (S.D.N.Y. 2012) (quoting Supplemental Rule E(8)).  Golden Horn argues that, because Norvik did not enter a

11

restricted appearance pursuant to the rule, it has waived its personal jurisdiction exception.  (Motion to Amend Reply at 9).

 The court in China National rejected a similar argument.  In that case, a ship charterer, China National, had obtained a Supplemental Rule B attachment of property belonging to Pactrans, a freight forwarder, in aid of an arbitration award, which the court later confirmed.  China National, 882 F. Supp. 2d at 583-86.  Because of the Second Circuit's decisions in Shipping Corp. of India and Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 (2d Cir.2009), which ruled that the attached property (electronic fund transfers) was not subject to attachment, the district court vacated the attachment.  China National, 882 F. Supp. 2d at 586.  On appeal of the confirmation of the arbitration award, the Second Circuit remanded so that the district court could determine whether it had personal jurisdiction over Pactrans.  China National Chartering Corp. v. Pactrans Air & Sea, Inc., 411 F. App'x 370, 373 (2d Cir. 2011).  China National argued that Pactrans had waived its personal jurisdiction objections on a number of grounds, including Pactrans' failure to make a restricted appearance under Supplemental Rule E(8).  China National, 882 F. Supp. 2d at 593.  The district court called the argument "incorrect," ruling that Pactrans had preserved its objection by asserting it in its answer.  Id. at 594.

Here, Norvik has asserted its objection to the proposed cause of action prior to its answer -- indeed, at its first opportunity to address the proposed claim.  The logic of China National establishes that Norvik has not waived its objection to personal jurisdiction, and that objection is well-taken.

B.   Motion to Deposit Attached Funds in the Court's Registry

Golden Horn also moves for an order requiring that the funds that it has attached, and which are now in the possession of Deutsche Bank, be transferred to the Court's registry.  Rule 67 of the Federal Rules of Civil Procedure, under which this motion is brought, provides:

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party -- on notice to every other party and by leave of court -- may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

Fed. R. Civ. P. 67(a).  The advisory committee's note to the 1983 amendment states:

> Rule 67 has been amended in three ways.  The first change is the addition of the clause in the first sentence. Some courts have construed the present rule to permit deposit only when the party making it claims no interest in the fund or thing deposited.  E.g., Blasin-Stern v. Beech-Nut Life Savers Corp., 429 F. Supp. 533 (D. Puerto Rico 1975); Dinkins v. General Aniline & Film Corp., 214 F. Supp. 281 (S.D.N.Y. 1963).  However, there are situations in which a litigant may wish to be relieved of responsibility for a sum or thing, but continue to claim an interest in all or part of it.  In these cases the

13

> deposit-in-court procedure should be available; in addition to the advantages to the party making the deposit, the procedure gives other litigants assurance that any judgment will be collectable. The amendment is intended to accomplish that.

Thus, the rule invites a litigant to be "relieved of responsibility for a sum" that is the subject of litigation. It is not clear that the rule provides a mechanism for a plaintiff to compel the deposit of funds already attached under Supplemental Rule B.

Golden Horn also relies on Local Admiralty Rule E.4, but that rule applies to property taken into the possession of the marshal pursuant to Supplemental Rule E(4)(b), which governs "tangible property" taken "into the marshal's possession for safe custody." Supplemental Rule E(4)(b); Local Admiralty Rule E.4. By its terms, it is irrelevant to intangible property attached pursuant to Supplemental Rule B.

Even if there is authority to issue the order Golden Horn seeks, I would not do so. Golden Horn purports to be concerned about its ultimate ability to collect a judgment against Norvik, a Latvian company with economic ties to Russian entities, in light of "war in Eastern Ukraine, sanctions on the Russian Federation, a dramatic fall in oil prices and devaluation of the Ruble." (Plaintiff's Memorandum of Law in Reply to the Defendant's Opposition to the Plaintiff's Motion for an Order Directing Garnishee Deutsche Bank Trust Company Americas to Deposit Attached

Funds into the Registry of the Court at 4-5).  Golden Horn also supposes that the attached funds are not currently earning interest.  (Memorandum of Law in Support of the Plaintiff's Motion for an Order Directing Garnishee Deutsche Bank Trust Company Americas to Deposit Attached Funds into the Registry of the Court at 4).  Golden Horn's fears are entirely speculative.  Not only are the attached funds secure where they are, but Norvik also maintains a United States Dollar correspondent account at Deutsche Bank with a current balance of more than $56 million.  (Declaration of Marija Stepina dated Feb. 5, 2015 ("Stepina Decl."), ¶ 12).  Transfer of the attached funds is therefore not necessary to ensure that any judgment can be satisfied.

On the other hand, granting Golden Horn's application would impose substantial hardship on Norvik.  Norvik has submitted an affirmation from its chief financial officer outlining the liquidity and capital adequacy requirements of the Financial and Capital Market Commission ("FCMC") by which it is regulated. (Stepina Decl., ¶¶ 1, 3-9).  Although the FCMC has allowed the attached funds held by Deutsche Bank to be treated as assets for the purposes of its regulations, depositing the funds into the court's registry could have serious effects on the company's regulatory compliance.  (Stepping Decl., ¶¶ 10-11).

Conclusion

For the foregoing reasons, Golden Horn's motion to amend the complaint (Docket no. 20) and its motion for an order that certain funds be deposited into the Registry of the Court (Docket no. 23) are denied.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       March 23, 2015

Copies transmitted this date:

Owen F. Duffy, III, Esq.
Law Offices of Owen F. Duffy
5 Penn Plaza, 19th Floor
New York, NY 10001

Michael J. Frevola, Esq.
Holland & Knight LLP
31 W. 52nd St.
New York, NY 10019