```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
GOLDEN HORN SHIPPING CO. LTD.,      :   14 Civ. 2168 (JPO) (JCF)
                                    :
            Plaintiff,              :          MEMORANDUM
                                    :          AND   ORDER
    - against -                     :
                                    :
VOLANS SHIPPING COMPANY LIMITED     :
and NORVIK BANKA,                   :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: __4/15/16__

Defendant JCF Norvik Banka (sued as "Norvik Banka" and

referred to hereinafter as "Norvik") seeks to reduce the amount of

funds subject to an attachment issued pursuant to Rule B of the

Supplemental Rules for Admiralty or Maritime Claims.   The

application raises the issue of whether a claim for costs awarded

to the plaintiff, Golden Horn Shipping Co. Ltd. ("Golden Horn"),

in a London arbitration based on the same dispute at issue in this

action is sufficiently maritime[1] in nature to be secured by a

---

[1] Although technically the terms "admiralty law" and "maritime law"
are distinct, see Rod Sullivan, Punitive Damages and a Century of
Maritime Law, 15 Fla. Coastal L. Rev. 1, 25-26 (2013) ("While some
use those terms interchangeably, the terms are not the same.
Maritime law refers to the broad categories of statutory and
general maritime laws that apply to cases that arise either out of
a maritime tort or a maritime contract.   Admiralty law is a
subcategory of maritime law and applies to suits claimants bring
against a vessel or piece of property in rem to enforce a maritime
lien.   Therefore, while all admiralty cases are maritime cases,

1

Supplemental Rule B attachment.  Norvik's application is granted in part.[2]

Background

As noted in earlier opinions, the complaint alleges that Golden Horn and Norvik negotiated agreements constituting a bareboat charter between Golden Horn and Norvik's subsidiary, defendant Volans Shipping Company ("Volans").  _Golden Horn Shipping Co. v. Volans Shipping Co._, No. 14 Civ. 2168, 2015 WL 1344374, at *1 (S.D.N.Y. March 23, 2015) ("_Golden Horn II_").  The agreements allowed Golden Horn to use Volans' vessel, M.V. Apus (the "Vessel"), to "transport frozen fish in the Sea of Okhotsk and the Bering Sea."  _Golden Horn II_, 2015 WL 1344374, at *1 (quoting _Golden Horn Shipping Co. v. Volans Shipping Co._, No. 14 Civ. 2168, 2014 WL 5778535, at *1 (S.D.N.Y. Nov. 6, 2014) ("_Golden Horn I_")).  But the Vessel was laid up in port for mechanical repairs, causing the defendants to miss not only the initial cargo

---

not all maritime cases are admiralty cases." (footnotes omitted)), I will follow conventional practice and use the terms interchangeably, _see, e.g._, _Weaver v. Hollywood Casino-Aurora, Inc._, 255 F.3d 379, 381 n.2 (7th Cir. 2001) ("The terms 'admiralty' and 'maritime' are used interchangeably for purposes of this opinion as the precedents discussed below use both terms.")

[2] As noted in an earlier order, the parties agree that this dispute is properly before me pursuant to the referral for general pre-trial supervision by the Honorable J. Paul Oetken, U.S.D.J.

delivery date, but also subsequent revised deadlines.  <u>Golden Horn</u>
<u>II</u>, 2015 WL 1344374, at *1.  Approximately five months after the
original cargo delivery date, Norvik informed Golden Horn that it
had conveyed the Vessel to another shipping company.  <u>Id.</u>

Golden Horn then filed the complaint in this action against
both Norvik and Volans asserting that Volans breached the parties'
agreements by failing to deliver the Vessel (Complaint, ¶¶ 55-56),
and that Norvik is liable for the breach because it is an alter
ego of Volans, <u>Golden Horn I</u>, 2014 WL 5778535, at *4-5; (Complaint,
¶¶ 57-81).  The complaint sought approximately $4 million in
damages.  (Complaint, ¶¶ 95-97).  Golden Horn indicated that it
would exercise its right under the agreements to resolve the
dispute in the London Court of International Arbitration (the
"LCIA"), but "maintain[ed] that the instant action is appropriate
and necessary to obtain <u>quasi</u> <u>in</u> <u>rem</u> jurisdiction over the property
of [Norvik] by way of Maritime Attachment and Garnishment pursuant
to [Supplemental] Rule B so as to obtain security for its damages."
(Complaint, ¶¶ 99-100).

On March 28, 2014, pursuant to an order signed by Judge
Oetken, the Clerk of Court issued a Writ of Attachment and
Garnishment in the amount of $3,960,693.20, which was served on
garnishee Deutsche Bank Trust Company Americas, where Norvik holds

a United States Dollar correspondent account.[3]  Golden Horn II, 2015 WL 1344374, at *6; Golden Horn I, 2014 WL 5778535, at *1; (Declaration of Service dated March 31, 2014).  Norvik moved to vacate the attachment arguing, in part, that Golden Horn had not made a prima facie case that Volans is Norvik's alter ego.  Golden Horn I, 2014 WL 5778535, at *1.  Judge Oetken denied the motion, finding that "Golden Horn ha[d] amply made a prima facie case that Volans was Norvik's alter ego," by pleading facts (1) showing "a disregard of corporate formalities, complete overlap in ownership, common office space, addresses, and email addresses of the two corporations," (2) showing that "Volans lacked independent employees and, therefore, [] lacked any business discretion [so that] the dealings between it and Norvik could not have been at arm's length," and (3) showing that "the corporations are not treated as independent profit centers on Norvik's financial statements."  Id. at *6.

Meanwhile, Volans (as claimant) and Golden Horn (as respondent and counterclaimant) proceeded to arbitrate their dispute over the bareboat charter before the LCIA. (Final Award dated Dec. 23, 2015, attached as Exh. B to Letter of Michael J.

---

[3] A small portion of the attached funds belongs to Volans. See Golden Horn I, 2014 WL 5778535, at *1 n.1.

Frevola dated Feb. 26, 2016 ("Frevola 2/26/16 Letter"), at 1).
During the arbitration, there was some disagreement over whether
the arbitrator should issue a single award, encompassing both
damages and costs, or instead issue one award for damages and a
separate award for costs.  (Post-Hearing Order dated Oct. 11,
2015, attached as Exh. A to Letter of Owen F. Duffy, III dated
Feb. 19, 2016 ("Duffy 2/19/16 Letter"), at 1).  Volans worried
that, if Golden Horn prevailed and its damages and costs were
included in one award, Golden Horn might attempt to "claim costs
in the US proceeding" -- that is, this proceeding -- although
Volans "underst[ood] [] that since a claim for costs is not a
maritime claim it cannot be recovered in the current proceedings
in the US where Norvik [] funds are arrested."  (Post-Hearing
Order at 2).  For its part, Golden Horn urged a single award
"because separate awards will simply, and unnecessarily, increase
the overall costs because there will be legal costs to prepare
additional argument and there will be additional costs to produce
a second award."  (Post-Hearing Order at 3).  Golden Horn also
rejected Volans' concern that a single award would cause
"confusion" in this proceeding, stating, "[W]e anticipate that a
single award will make clear what sums are being awarded as
damages/restitution, . . . and what sums are being awarded as

costs" such that "there is no chance of confusion . . . and . . . no possibility of prejudice to Volans." (Post-Hearing Order at 2-3). Counsel for Golden Horn also "reject[ed] the suggestion that [his] clients would seek to exploit any such confusion in the New York proceedings." (Post-Hearing Order at 2-3).

The arbitrator ultimately found that Volans was liable to Golden Horn for $803,424.58 in damages, and $280,340.86 + £32,684.11 in costs, plus interest. (Final Award at 66). He issued only one award, in accordance with his earlier decision on that formal dispute. (Final Award at 66; Post-Hearing Order at 4-5).

Norvik requests a reduction in the amount subject to attachment in this proceeding to $850,000, an amount representing Volans' liability in damages to Golden Horn plus an approximation of the interest due on that amount. (Letter of Michael J. Frevola dated Feb. 16, 2016 ("Frevola 2/16/16 Letter"), at 1 & 2 n.2). Golden Horn argues that funds in the amount of $1,325,743.20 -- $803,424.58 in damages from the London arbitration, $327,318.68 in costs from the London arbitration, $75,000 in estimated pre-judgment interest on those awards, and $120,000 in estimated attorneys' fees from this action -- should remain attached. (Duffy 2/19/16 Letter at 14). Norvik replies that (1) there is

no basis for any claim for attorneys' fees in this action; (2) the amount awarded in costs by the LCIA cannot be the subject of a Supplemental Rule B attachment because a claim for those costs is not maritime in nature; and (3) Golden Horn should be judicially estopped from asserting that the amount awarded in costs should continue to be secured by the attachment in light of its position in the LCIA that a single, composite award should issue. (Frevola 2/26/16 Letter at 2-5).

After briefing was completed, I reduced the amount of the attachment to $1,325,743.20 without objection by Golden Horn, while I considered the further reduction requested by Norvik. (Order dated March 30, 2016, at 2).

<u>Discussion</u>

A.   <u>Judicial Estoppel</u>

Volans argued in the LCIA that, if Golden Horn prevailed there, the arbitrator should issue two awards -- one encompassing damages and the other costs -- in order that there would be no "confusion" in this proceeding. (Post-Hearing Order at 2). In its view, any award of costs would not be a maritime claim and would therefore not be recoverable "in the current proceedings in the US." (Post-Hearing Order at 2). Golden Horn, on the other hand, sought a single award in order to save time and money, and

pledged not to exploit any "confusion" engendered by an award including both damages and costs. (Post-Hearing Order at 2-3). The arbitrator issued a single award, finding "good reasons, on the basis of efficiency." (Post-Hearing Order at 4). He was further satisfied that the judge in this proceeding "would be fully capable of distinguishing maritime from non-maritime claims/recoveries (assuming _arguendo_ that Volans is correct that costs of the arbitration are 'non-maritime')." (Post-Hearing Order at 5). Here, Norvik asserts that Golden Horn should be estopped from arguing that the LCIA costs are maritime claims, because that position is inconsistent with the one it took in the LCIA proceeding. (Frevola 2/16/16 Letter at 3; Frevola 2/26/16 Letter at 2-4).

Application of judicial estoppel is within the court's discretion. New Hampshire v. Maine, 532 U.S. 742, 750 (2001).

> [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Id. at 750-51 (internal citations omitted) (quoting United States
v. Hook, 195 F.3d 229, 306 (7th Cir. 1999), and Edwards v. Aetna
Life Insurance Co., 690 F.2d 595, 599 (6th Cir. 1982)).  The Second
Circuit interprets the doctrine narrowly, "limit[ing] [it] to
situations where the risk of inconsistent results with its impact
on judicial integrity is certain." Uzdavines v. Weeks Marine,
Inc., 418 F.3d 138, 148 (2d Cir. 2005) (quoting Simon v. Safelite
Glass Corp., 128 F.3d 68, 72 (2d Cir. 1997)).

Before the LCIA, Golden Horn stated that it would not exploit
any confusion that might arise from including both costs and
damages in a single award.  Here, Golden Horn argues that the
costs from the arbitration are maritime claims and can therefore
be secured by a Supplemental Rule B attachment.  This position is
not clearly inconsistent with its statements to the arbitrator.
Golden Horn is not exploiting confusion engendered by the issuance
of a single award, as I can easily determine what amount of his
award is attributable to costs and what amount to damages.
Moreover, there is no indication that Golden Horn would not make
the same argument even if the arbitrator had issued separate
awards.  Importantly, Golden Horn did not assert that it agreed
with Volans' stance that a claim for costs is non-maritime or that
it would forego any such argument here.

Additionally, Norvik has not explained how Golden Horn's position here, if accepted, would "certain[ly]" risk inconsistent results -- nor could it, as the LCIA arbitrator did not rule that costs were non-maritime claims or that they could not be secured by the Supplemental Rule B attachment.   Rather, he avoided any such decision, merely assuming for the purposes of the parties' arguments that Volans' view was correct.[4]  (Post-Hearing Order at 5).  Barring the plaintiff from arguing that the LCIA costs award is a maritime claim is therefore inappropriate.

   B.   Supplemental Rule B Attachment

The purpose of a Supplemental Rule B maritime attachment is "two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment."  Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437 (2d Cir. 2006), overruled on other grounds by Shipping Corp. of India v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009).  To be granted such an attachment, a plaintiff must first show that "it has a valid prima facie admiralty claim against the defendant."  Id. at 445.   This determination comprises two subsidiary

---

[4] In light of these findings, it is unnecessary to evaluate whether Golden Horn persuaded the LCIA to accept its position or whether Norvik would be unfairly prejudiced by allowing Golden Horn to make its argument.

questions: first, whether the claim "sounds in admiralty" and, second, "whether the claim is prima facie valid." Blue Whale Corp. v. Grand China Shipping Development Co., 722 F.3d 488, 493 (2d Cir. 2013). "[W]hether a claim is properly considered a maritime claim for purposes of the applicability of [Supplemental] Rule B is a purely procedural issue, and thus governed by federal law irrespective of the law to be applied to any underlying claims." Euro Trust Trading S.A. v. Allgrains U.K. Co., No. 09 Civ. 4483, 2009 WL 2223581, at *3 (S.D.N.Y. July 27, 2009); see also Blue Whale, 722 F.3d at 494 ("[W]hat is clear is that federal law controls the procedural inquiry, namely, whether a plaintiff's claim sounds in admiralty.  This question is inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction and, thus, is controlled by federal maritime law." (internal citations omitted)).

Supplemental Rule E(6) allows a court to reduce the amount of security upon a motion, "for good cause shown." Fed. R. Civ. P. Supp. R. E(6).  The court must "determine whether the amount attached is 'excessive' or 'reasonably necessary to secure the plaintiff's claim.'" Ronda Ship Management Inc. v. Doha Asian Games Organising Committee, 511 F. Supp. 2d 399, 405-06 (S.D.N.Y. 2007) (quoting A.R.A. Anomina Ravannate Di Armamento, SPA v.

Heidmar Inc., No. 97 Civ. 1383, 1997 WL 615495, at *1 (S.D.N.Y. Oct. 6, 1997)).  In doing so, the court may preliminarily review the complaint in order to satisfy itself that the claims may support an award of damages in approximately the amount attached. See Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport, N.V., 572 F.3d 96, 111 (2d Cir. 2009).

     1.  Attorneys' Fees

Golden Horn asserts that its claim for $120,000 in estimated attorneys' fees should be secured by the Supplemental Rule B attachment.  (Duffy 2/19/16 Letter at 14).  Norvik points out that the plaintiff "gives no basis for why it would receive an attorneys' fees award in this [] proceeding."  (Frevola 2/26/16 Letter at 2).  Norvik is correct.  To be sure, there is a "maritime exception to the American rule" that each party bears its own attorneys' fees where the prevailing party presents "clear evidence" that the other party has "commenced or conducted an action in bad faith, vexatiously, wantonly, or for oppressive reasons."  Dolco Investment, Ltd. v. Moonriver Development, Ltd., 526 F. Supp. 2d 451, 453 (S.D.N.Y. 2007) (quoting Dow Chemical Pacific, Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986)).  But Golden Horn has neither presented such evidence nor indicated that it intends to do so.  Moreover, there is no

12

fee-shifting provision in the underlying bareboat charter.  Golden Horn's unsupported claim for estimated attorneys' fees should not be secured by the attached funds.

      2.   <u>Costs</u>

Norvik does not contend that claims for costs are never maritime claims.  It is clear that an estimated amount of costs can be secured by a Supplemental Rule B attachment: Supplemental Rule E, which provides procedures for claims of maritime attachment and garnishment under Supplemental Rule B, allows the court to "require the plaintiff, defendant, claimant, or other party to give security, or additional security, . . . to pay all costs and expenses that shall be awarded against the party."  Fed. R. Civ. P. Supp. R. E(2)(b).  Thus, Norvik concedes that "[c]osts awards issued in one proceeding against one party and then sought to be enforced through U.S. security against the <u>same</u> party can be treated as maritime."  (Frevola 2/26/16 Letter at 3).  However, "costs awards from <u>separate</u> proceedings, or against <u>separate</u> entities, cannot."  (Frevola 2/26/16 Letter at 3).

      a.   <u>Separate Proceedings</u>

It has been the practice in this district to allow Supplemental Rule B attachments of funds in amounts that include costs awarded or expected to be awarded in separate proceedings.

For example, in Golden Ocean Group Ltd. v. G.T. Group Holding, No. 09 Civ. 7391,[5] 2009 WL 8624484 (S.D.N.Y. Sept. 2, 2009), the court attached funds in the amount of $668,981.50 "inclusive of interests, costs, and attorneys' and arbitrators' fees." Id. at *1. As the complaint in that case makes clear, the attachment was taken in aid of arbitration which was to occur in London. (Complaint, ¶¶ 18-19, 21, Golden Ocean Group Ltd. v. G.T. Group Holding, No. 09 Civ. 7391 (S.D.N.Y. Aug. 21, 2009)). In DSND Subsea AS v. Oceanografia, S.A. de CV, 569 F. Supp. 2d 339 (S.D.N.Y. 2008), the parties arbitrated their maritime dispute in London, which eventually resulted in an award of costs against the defendant in connection with its unsuccessful jurisdictional arguments and subsequent appeal. Id. at 341. Thereafter, the plaintiff secured its claim for the awarded costs and for the damages it sought in the London proceedings with a Supplemental Rule B attachment. Id. at 342. The defendant moved to vacate the attachment, and the plaintiff cross-moved "for an order directing that a portion of defendant's attached funds be awarded to plaintiff in satisfaction of the orders from the [English] High Court and [arbitration] [t]ribunal" granting costs to the plaintiff. Id. at 342, 351. The court granted the motion, noting

---

[5] Westlaw lists an incorrect case number on this opinion.

that at oral argument the defendant had "agree[d] that there was no impediment to the entry of such an order." Id. at 351. That is, the DNSD Subsea court allowed an award of costs in a separate proceeding to be collected from the funds attached under Supplemental Rule B.

Norvik relies primarily on Cosmotrade Exports, S.A. v. Conchart Overseas (Offshore) SAL, No. 09 Civ. 4211, 2009 WL 2914337 (S.D.N.Y. Sept. 8, 2009), which in turn relies on two other cases from this district, Pires v. Heller, No. 04 Civ. 9069, 2004 WL 2711075 (S.D.N.Y. Nov. 24, 2004), and Naias Marine S.A. v. Trans Pacific Carriers Co., No. 07 Civ. 10640, 2008 WL 111003 (S.D.N.Y. Jan. 10, 2008). In Pires, defendant Kenneth Heller was the former attorney of plaintiff S.M. Pires and former co-counsel of plaintiff Saul Rudes. 2004 WL 2711075, at *1. Along with Mr. Rudes, Mr. Heller had represented Mr. Pires in a maritime action. Id. at *2. The plaintiffs sued him in state court for breach of contract and certain torts, such as breach of fiduciary duty, conversion, and fraud. Id. at *1. Mr. Heller, in turn, sued his former associate Susan Harmon for breach of an employment contract, and removed the case to federal court, claiming it fell within the federal courts' admiralty jurisdiction. Id. at *1-2. The court disagreed. It noted that the plaintiffs' contract claims arose from their

agreements with Mr. Heller regarding legal fees in the underlying maritime action, and that the third-party claim was "a standard breach of employment claim." Id. at *2.  Notwithstanding that the representation at the heart of the dispute occurred in an admiralty case, the specific agreements sued on did not "incorporate a 'uniquely maritime concern,'" which is required for a contract claim to fall within admiralty jurisdiction.   Id. (quoting American Home Assurance Co. v. Merck & Co., 329 F. Supp. 2d 436, 442 (S.D.N.Y. 2004)).  Similarly, the tort claims, which alleged that Mr. Heller had stolen money from Mr. Pires and Mr. Rudes, were "entirely separate from the underlying maritime action in which [Mr.] Pires suffered leg amputations from his shipowner's denial of maintenance and cure." Id.  The court asserted that "the fact that the previous lawsuit involved maritime claims [is not] sufficient to establish admiralty jurisdiction over any future lawsuits arising between the parties." Id. at *3.

Building on this observation, Naias Marine addressed a situation in which the plaintiff sought a Supplemental Rule B attachment to secure "a claim for estimated costs for defending against [defendant] Trans Pacific's maritime claims in [a] London arbitration." 2008 WL 111003, at *2.  The court found that the claim for costs could not be characterized as a maritime claim

merely because the underlying claim in the London arbitration was maritime.  Id. at *4.  The court distinguished an earlier Supplemental Rule B attachment action brought by Trans Pacific, which sought security both for the claim to be submitted to arbitration in London and for the costs of that arbitration.  Id. at *1.  "In the Trans Pacific action, Trans Pacific set forth a valid prima facie admiralty claim for breach of the charter party agreement, and obtained an attachment for that claim, with an ancillary claim for costs."  Id. at *3.  The court noted that "if Naias [had] asserted a maritime claim [in the instant case], it likely would be entitled to security for costs as well.  Naias, however, has asserted only a claim for legal costs, without more."  Id. at *5.  That is, where a plaintiff "has failed to set forth a maritime claim," security for costs is unavailable.  Id.

In the words of the court in Cosmotrade, Naias Marine teaches "that a bare claim for legal fees -- even legal fees incurred in a maritime proceeding -- is not essentially maritime in nature, even if the legal fees are being incurred in a separate maritime action."  2009 WL 2914337, at *5.  Cosmotrade, a time charterer, had obtained a Supplemental Rule B attachment in the amount of $539,365.44.  Id. at *1 & n.1.  This attachment secured certain claims that were to be heard in a future London proceeding against

two defendants -- Contchart Overseas (Offshore) SAL ("Contchart") and Overcom S.A. ("Overcom") -- who had arranged to ship a cargo of pig iron on the chartered vessel including $73,750.00 in damages attributable to the detention of the vessel; $151,545.90 in estimated interest on that claim; and $250,000.00 in estimated costs and attorneys' fees on the claim.  Id.; (Amended Verified Complaint, ¶¶ 7-12, 21-22, 25-26, Cosmotrade Exports S.A. v. Contchart Overseas (Offshore) SAL, No. 09 Civ. 4211 (S.D.N.Y. May 13, 2009) ("Cosmotrade Compl.").  It also secured $64,069.64, representing an estimated award of costs from a separate proceeding in the English High Court (brought by Contchart and Overcom) that had sought an injunction requiring the plaintiff to release the bills of lading connected with the subject voyage.  Cosmotrade, 2009 WL 29314337, at *1; (Cosmotrade Compl., ¶¶ 16-17, 25).  The defendants filed a motion that, among other things, asked the court to "vacate that part of the attachment seeking security for reimbursement of the English High Court costs on the basis that such costs do not constitute an admiralty claim."  Cosmotrade, 2009 WL 2914337, at *1.  Relying on Naias Marine, the court granted the request, noting that "plaintiff's claim for security for the payment of costs awarded in a wholly separate  . . . action in the English High Court [] is not a maritime claim in this court

and does not confer maritime jurisdiction in the present action." Id. at *5. That is, the costs award from the prior maritime action was not "ancillary" to the maritime claim that was the subject of the anticipated London proceeding, in aid of which the plaintiff had sought Supplemental Rule B attachment. See id.; see also Naias Marine, 2008 WL 111003, at *3. However, the estimated costs and attorneys' fees (in the amount of $250,000) for that upcoming proceeding were left undisturbed as ancillary to the maritime claim.

Properly understood, then, Cosmotrade does not support Norvik's position here. Rather, the case deals with a "bare claim" for costs derived from an action that is procedurally unrelated to the action which forms the foundation of the request for Supplemental Rule B attachment and holds, following Naias Marine, that such a claim is non-maritime. Here, on the other hand, Golden Horn sought attachment of Norvik's funds in aid of the London arbitration, and it was awarded costs in that arbitration. Its claim against the attached funds derives from the damages calculated in that proceeding, and the claim for costs is quite clearly ancillary to that award. The claim here is more akin to the Trans Pacific action (discussed in Naias Marine), where the plaintiff "set forth a valid prima facie admiralty claim for breach

19

of the charter party agreement, and obtained an attachment for that claim, with an ancillary claim for costs." Naias Marine, 2008 WL 111003, at *3. These precedents indicate that the claim for costs awarded in the London arbitration is a maritime claim.

### b.   Separate Parties

Norvik also contends that a costs award against one entity cannot be secured by a Supplemental Rule B attachment against a separate entity. (Frevola 2/26/16 Letter at 3). While as a general matter that might be true, the defendant leaves out an important detail: Judge Oetken has already found that Golden Horn "has amply made a prima facie case that Volans was Norvik's alter ego." Golden Horn I, 2014 WL 5778535, at *6. "When a court determines that two companies are alter egos, they may be treated as one unit for all legal purposes." In re South African Apartheid Litigation, 617 F. Supp. 2d 228, 303 (S.D.N.Y. 2009); see also Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1038 (7th Cir. 2000) ("[A] contention that A is B's 'alter ego' asserts that A and B are the same entity . . . ."). Norvik has not explained why this principle should not apply in the maritime context.

In any event, case law, including Cosmotrade, indicates that the principle does indeed apply here. Along with Contchart and

Overcom, Cosmotrade sued two other entities -- Navitrade and Continental Ship Management ("CSM") -- alleging they were alter egos of Contchart.  Cosmotrade, 2009 WL 2914337, at *1, 5; (Cosmotrade Compl., ¶¶ 27-34).  Navitrade and CSM sought to vacate the attachment as to them, contending that the complaint did not sufficiently allege that they were alter egos of Contchart. Cosmotrade, 2009 WL 2914337, at *1, 5.  The court ultimately found that the complaint "ma[de] out a prima facie case that Navitrade and CSM are . . . alter egos of Conchart" and that there was therefore "no basis to vacate the attachment as to either of those entities," id. at *5, even though neither Navitrade nor CSM were to be parties in the future London proceeding (Cosmotrade Compl., ¶¶ 25-26 (noting amounts Cosmotrade "expects to recover . . . in English High Court or London arbitration proceedings" from Conchart and Overcom, alone)).

In Emeraldian Ltd. Partnership v. Wellmix Shipping Ltd., No. 08 Civ. 2991, 2009 WL 3076094 (S.D.N.Y. Sept. 28, 2009), the plaintiff Emeraldian Limited Partnership ("Emeraldian") sought an order for process of maritime attachment and garnishment against three defendants in the amount of $7,593,015.13, which included amounts for interest and costs.  Id. at *1.  The complaint establishes that the underlying dispute was to be resolved in a

21

proceeding in London that included only Wellmix Shipping Ltd.
("Wellmix"). (Amended Verified Complaint, ¶¶ 6, 9, 11, <u>Emeraldian</u>
<u>Ltd. Partnership v. Wellmix Shipping Ltd.</u>, No. 98 Civ. 2991
(S.D.N.Y. Nov. 12, 2008));[6] <u>Emeraldian</u>, 2009 WL 3076094, at *1.
The plaintiff alleged that defendant Kam Kwan was an alter ego of
defendant Guangzhou Iron & Steel Corporation ("Guangzhou"), which
had guaranteed the performance of the maritime contract between
Emeraldian and Wellmix.[7] Kam Kwan sought to vacate the attachment
as to it. <u>Id.</u> at *2. The court granted Kam Kwan's motion, but
not on the grounds that Emeraldian inappropriately secured a
projected costs award from a separate proceeding against a separate
party; rather, the court vacated the attachment against Kam Kwan
because Emeraldian had not sufficiently alleged that Kam Kwan was
an alter ego of Guangzhou and therefore had not shown that it had
an admiralty claim against Kam Kwan. <u>Id.</u> at *3-5. The obvious
implication is that, if Emeraldian had alleged an alter ego

_____

[6] The final complaint in that case -- the Third Amended
Verified Complaint -- was filed under seal and is not, therefore,
publicly available. However, the paragraphs cited from the
Amended Verified Complaint appear verbatim in that sealed
complaint, although at paragraphs 7, 10, and 12, rather than
paragraphs 6, 9, and 11.

[7] "[A] claim based on a guarantee of performance of a maritime
contract is maritime in nature." Emeraldian, 2009 WL 3076094, at
*1-2.

relationship, the claim against Kam Kwan would have sounded in admiralty and would have been appropriately secured by the Supplemental Rule B attachment, notwithstanding that the underlying claim would be resolved in a separate proceeding to which Kam Kwan was not a party.

The relevant cases, including <u>Naias Marine</u> and <u>Cosmotrade</u> -- the cases on which Norvik primarily relies -- indicate that the costs award in Golden Horn's favor in the LCIA action against Volans can be secured by the Supplemental Rule B attachment of funds predominantly belonging to Volans' alleged alter ego Norvik.

C.   <u>Calculation</u>

As it currently stands, the attachment in this case secures $1,325,743.20, comprising $803,424.58 for the claim for wrongful repudiation of the charter party resolved in the London arbitration, $327,318.68 in costs awarded in the London arbitration, $75,000 in estimated pre-judgment interest as ordered in the London arbitration (Final Award at 66), and $120,000 in estimated attorneys' fees from this action.[8]  I have found that the claim for attorneys' fees should not be secured by the attachment, so the restrained amount must be reduced by $120,000.

---

[8] There is a slight discrepancy -- of six cents -- between the amount of the attachment and the sum of these specific listed amounts

Norvik has not challenged the amount of the damages award, the amount of the costs award, or the estimated interest.[9] Therefore, the attachment should be reduced to $1,205,743.20 (i.e., $1,325,743.20 - $120,000.00 = $1,205,743.20).

Conclusion

For the foregoing reasons, the amount of funds subject to the Writ of Attachment and Garnishment originally issued on March 28, 2014, is reduced to $1,205,743.20.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 15, 2016

Copies transmitted this date:

Owen F. Duffy, III, Esq.
Law Offices of Owen F. Duffy
5 Penn Plaza, 19th Floor
New York, NY 10001

---

[9] Norvik's original reduction request estimated interest at approximately $46,500, but that calculation relied on a principal amount that excluded the London arbitration's costs award. (Frevola 2/16/16 Letter at 1-2 & n.2).  Golden Horn's response estimated the interest on both the damages and costs award at $75,000 (Duffy 2/19/16 Letter at 14), and Norvik's subsequent submission does not quibble with that amount.

```
Michael J. Frevola, Esq.
Holland & Knight LLP
31 W. 52nd St.
New York, NY 10019
```