UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLDEN HORN SHIPPING CO. LTD., <br>                                       Plaintiff, <br> -v- <br> VOLANS SHIPPING CO. LTD. and NORVIK BANKA, <br>                                       Defendants. | 14-CV-2168 (JPO) <br><br> OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

      Plaintiff Golden Horn Shipping Company Limited ("Golden Horn") brings this admiralty action against Defendants Volans Shipping Company Limited ("Volans") and Norvik Banka ("Norvik") for breach of a charter agreement for the M.V. Apus ("the Vessel"). Currently pending before the Court are a motion to dismiss under the doctrine of *forum non conveniens* filed by Norvik (Dkt. No. 63); a motion for summary judgment filed by Golden Horn (Dkt. No. 67); a motion for summary judgment filed by Norvik (Dkt. No. 72); and a motion to strike certain evidence submitted by Golden Horn in its motion for summary judgment (Dkt. No. 85). For the reasons that follow, Norvik's motion to dismiss pursuant to *forum non conveniens* is granted and the remaining motions are denied as moot.

**I.    Background**

      Familiarity with the facts of this case and this Court's prior opinions is presumed. *See Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14 Civ. 2168, 2015 WL 6684518 (S.D.N.Y. June 30, 2015); *Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14 Civ. 2168, 2014 WL 5778535 (S.D.N.Y. Nov. 6, 2014).

      Golden Horn initiated this litigation on March 27, 2014, alleging breach of the charter agreement and seeking issuance of a Process of Maritime Attachment and Garnishment, pursuant

to Federal Rule of Civil Procedure Supplemental Admiralty Rule B, against Norvik's property found within this district. (Dkt. No. 2 ("Compl.").) On March 31, 2014, a writ of attachment was served on Deutsche Bank Trust Company Americas ("Deutsche Bank") in New York. (Dkt. No. 91 ¶ 6.) On April 16, 2014, Deutsche Bank confirmed that Norvik had an account in New York and restrained funds belonging to Norvik in the amount of $3,960,693.20. (*Id.* ¶ 8.) This Court denied Norvik's subsequent motion to vacate the attachment of those assets. *See Golden Horn Shipping*, 2014 WL 5778535.

Golden Horn is organized and exists pursuant to the laws of Russia. (Compl. ¶ 4.) Volans is organized and exists pursuant to the laws of Belize. (*Id.* ¶ 7.) Norvik is organized and exists pursuant to the laws of Latvia. (*Id.* ¶ 12.) On July 1, 2013, Volans and Golden Horn entered into a charter for the Vessel. (*Id.* ¶¶ 22–23; Dkt. No. 2-2.) On July 8, 2013, Norvik invoiced Golden Horn for $400,000 so that Norvik could use the funds to repair and upgrade the Vessel before delivering it to Golden Horn. (Compl. ¶¶ 34–35.) On August 30, 2013, Golden Horn applied to have the Vessel registered under the Russian flag[1] and hired officers, crew, fuel and supplies, for the Vessel, which was located in Lithuania. (*Id.* ¶¶ 36–40.)

However, the ship was never delivered to Golden Horn—it was instead delivered to another party. (*Id.* ¶¶ 41–56.) The parties engaged in arbitration in London to determine whether the charter was cancelled by mutual agreement or whether Volans wrongfully repudiated the charter. The arbitrator found that "Volans wrongfully repudiated the Bareboat Charter as of 28 January 2014." (Dkt. No. 51-2 ¶ 141.) Golden Horn then filed a complaint in this district, seeking to attach Norvik's property pursuant to Rule B of the Supplemental Rules

---

[1] The application was not successful and the ship remains under the flag of Belize. (*See* Compl. ¶ 47.)

for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, alleging a breach of maritime contract by Volans, and seeking damages in the amount of $3,960,693.20. (Compl. ¶¶ 89–93, 100–01.) Norvik is liable for breach of the maritime contract, Golden Horn alleges, because it is the alter ego of Volans. (*Id.* ¶¶ 94–97.) Whether Norvik is the alter ego of Volans is the primary legal issue pending before this Court. (*See* Dkt. No. 67; Dkt. No. 72.)

In January 2015, Golden Horn moved to amend its complaint and moved for an order to deposit the attached funds. (Dkt. No. 20; Dkt. No. 23.) On February 6, 2015, Norvik filed a notice pursuant to Federal Rule of Civil Procedure 44.1 regarding its intent to raise issues of Latvian law. (Dkt. No. 36.) On June 30, 2015, the Court denied both of Golden Horn's motions. *See Golden Horn Shipping*, 2015 WL 6684518.

In its current motion, Norvik argues that this Court is not the proper forum for judicial resolution of this issue and asks the Court to dismiss the proceedings pursuant to *forum non conveniens* in favor of the Latvian courts, except to the extent required to enforce any Latvian judgment that Golden Horn might obtain against Norvik. (*See* Dkt. No. 64.)

## II. Discussion

The doctrine of *forum non conveniens* permits dismissal of an action when "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). The doctrine is, "essentially, a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be

declined." *Id.* at 429–30 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)) (internal quotation marks omitted).

"The defendant bears the burden of proof on all elements of the motion," *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001), and "[a]ny review of a *forum non conveniens* motion starts with 'a strong presumption in favor of the plaintiff's choice of forum,'" *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). Indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

In *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) (en banc), the Second Circuit outlined a three-step analysis for motions to dismiss for *forum non conveniens*. The standard requires: (1) determining the degree of deference to be afforded to the plaintiff's choice of forum; (2) examining whether an adequate alternative forum exists; and (3) balancing the private and public factors implicated in the choice of forum. *See id.* at 73–74.

### A. Deference to Plaintiff's Choice of Forum

The "first level of inquiry" in the analysis is an assessment of the level of deference owed to a plaintiff's choice of forum. *Iragorri*, 274 F.3d at 73. "The degree of deference to which that choice is entitled 'varies with the circumstances': 'great deference' is owed where the plaintiff is suing in her home forum, while 'less deference' attaches when foreign plaintiff selects a United States forum for her suit." *Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410, 2015 WL 1454646, at *7 (S.D.N.Y. Mar. 31, 2015) (quoting *Iragorri*, 274 F.3d at 71)). In assessing the level of deference to be paid to a plaintiff's choice of forum, the Court utilizes a "sliding scale" approach. *Iragorri*, 274 F.3d at 71. "[T]he greater the plaintiff's or the lawsuit's bona fide connection to

4

the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Id.* at 72 (footnote omitted).

Golden Horn's choice of forum here is, at best, "entitled to a relatively low degree of deference" because Golden Horn is "a foreign business entity with no ties to the United States" and its choice of forum "seemingly bears no 'bona fide connection' to the events giving rise to this lawsuit." *Aracruz Trading Ltd. v. Japaul Oil & Mar. Servs.*, No. 08 Civ. 3511, 2009 WL 667298, at *4 (S.D.N.Y. Mar. 16, 2009). Indeed, Golden Horn concedes that its "choice of a New York forum deserves less deference than it would if Golden Horn [were] a domestic plaintiff." (Dkt. No. 90 at 6.)

Here, the only apparent connection to the United States is Norvik's maintenance of an account with Deutsche Bank in New York. In this case, "[t]he connections to the United States alleged by plaintiffs . . . are insubstantial in light of the fact that the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil." *Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 86 (2d Cir. 2007). Therefore, Golden Horn has "fail[ed] to allege a *bona fide* connection that justifies granting substantial deference to their choice of forum." *Id.* "However, this reduced weight 'is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since di[s]missal for forum non conveniens is the exception rather than the rule.'" *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 168 (2d Cir. 1991) (quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 46 (3d Cir. 1988)).

5

In deciding what level of deference to pay to Plaintiff's choice of forum, the Court weighs factors[2] that tend to indicate convenience against factors that tend to indicate forum shopping. *Norex Petroleum*, 416 F.3d at 155–56. The Court's analysis is "holistic." *Chigirinskiy*, 2015 WL 1454646, at *7.

Golden Horn argues that its choice of forum "rested with its ability to attach assets of the defendant in this district pursuant to Admiralty Rule B."[3] (Dkt. No. 90 at 6.) Maritime attachments are authorized in part because of "the 'peripatetic' nature of maritime parties, the 'transitory' status of their assets, and the need for parties to obtain security '[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies.'" *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 499 (2d Cir. 2013) (citations omitted). In this case, Norvik is a well-established bank in Latvia—not a typical maritime defendant whose assets might sail away. (*See* Dkt. No. 64 at 14–15.) Golden Horn's argument for convenience does not hold water.

---

[2] The "convenience factors" weighing against dismissal include "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense." *Norex Petroleum*, 416 F.3d at 155 (quoting *Iragorri*, 274 F.3d at 72) (internal quotation marks omitted). The "forum-shopping factors," which weight against giving deference to a plaintiff's choice of forum, include "[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum." *Id.* (quoting *Iragorri*, 274 F.3d at 72) (internal quotation marks omitted).

[3] Golden Horn also argues that it chose this forum to "obtain jurisdiction over Norvik Banka." (Dkt. No. 90 at 6.) However, as discussed below, because Norvik conditions dismissal pursuant to *forum non conveniens* on a Latvian court's retaining jurisdiction of this case, and because Golden Horn does not argue that it will be unable to obtain jurisdiction over Norvik in the foreign tribunal, the Court gives little weight to this justification. Golden Horn can obtain jurisdiction over Norvik in Latvian courts.

Golden Horn provides no other compelling reason why the U.S. courts are convenient, but Norvik does: "U.S. maritime law has a relatively low veil-piercing liability threshold versus other jurisdictions around the world." (Dkt. No. 99 at 5.) Golden Horn's attempt to win a tactical advantage by choosing this forum and advocating for the application of U.S. maritime law to its claims weighs against giving deference to its choice of forum.

Given the lack of ties to the United States, the at-best shaky reasoning given by Golden Horn for its choice of forum, and the likely tactical advantage Golden Horn has under U.S. maritime law, the Court affords little deference to Golden Horn's choice of forum.

### B. Adequate Alternative Forum

Second, the district court "asks if there is an alternative forum that has jurisdiction to hear the case." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir. 1996). Indeed, the Second Circuit has "clarif[ied] that a case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute." *Norex Petroleum*, 416 F.3d at 159 (2d Cir. 2005). "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).

Norvik is willing to condition dismissal on a Latvian court's exercising jurisdiction over Golden Horn's claims, and represents that it will not assert a jurisdictional defense based upon any statute of limitations. (Dkt. No. 64 at 16–17.) In light of this, Golden Horn concedes that the Latvian courts are an adequate alternative forum. (Dkt. No. 90 at 7.) Therefore, this factor is satisfied so long as any dismissal is conditioned upon a Latvian court's willingness to hear the case, "and upon all defendants effectively waiving any jurisdictional defenses or any defenses

based upon statute of limitations that may have arisen since the filing of the case in the present forum." *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 338 (S.D.N.Y. 2008), *aff'd*, 358 F. App'x 282 (2d Cir. 2009).

### C. *Gilbert* Factors

Finally, the Court determines, based on "the *Gilbert* factors," which forum would be the "most convenient" and "best serve the ends of justice." *Peregrine Myanmar*, 89 F.3d at 46 (citing *Gilbert*, 330 U.S. at 508–09). "In weighing the *Gilbert* factors, the court starts with a presumption in favor of the plaintiff's choice of forum . . . . The defendant has the burden of overcoming this presumption by establishing that the *Gilbert* factors 'tilt strongly in favor of' the alternative forum." *Id.* (alternation omitted) (citing *R. Maganlal*, 942 F.2d at 167).

The Court weighs both the five "private interest" factors and the four "public interest" factors. *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 29–31 (2d Cir. 2002).

#### 1. Private Interest Factors

The "private interest" *Gilbert* factors include "(1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." *Id.* at 29–30. In this case, "[t]he sole issue to be determined is whether Norvik is the alter ego of Volans." (Dkt. No. 64 at 19.)

First, the bulk of the evidence that must be adduced to resolve this issue is located in Latvia. (*See id.* (arguing that the evidence regarding the sale of Volans and Norvik's relationship to Volans, both of which are Latvian companies, is located in Latvia).) Moreover, certain evidence that may shed light on the commingling of assets between Norvik and Volans—which

is relevant to an alter-ego analysis—"cannot be disclosed in this proceeding absent a Latvian court order." (*Id.*)  The concentration of evidence in Latvia favors dismissal.  *See Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) ("In this case, the concentration of evidence in Guatemala weighs heavily in favor of dismissal."), *aff'd*, 499 F. App'x 54 (2d Cir. 2012).

Second, Golden Horn has identified a number of individuals and entities from which it seeks the production of documents.  (*See* Dkt. No. 64 at 20.)  Yet Norvik points out that "none of these individuals or entities are subject to the jurisdiction of this Court" and that "the majority of these individuals and entities are subject to the jurisdiction of a Latvian court."  (*Id.* (italics, bolding, and underlining omitted).)  Golden Horn disputes that witnesses are necessary to demonstrate corporate separateness.  (Dkt. No. 90 at 9.)  But Norvik "would like to proffer witnesses."  (Dkt. No. 64 at 20.)

To the extent that Norvik seeks to proffer witnesses, some of those witnesses are unwilling to come to the United States to testify, and Golden Horn does not dispute that a Latvian court could compel their testimony.  (Dkt. No. 90 at 9 (noting that Norvik could obtain testimony by "application to the Latvian court").)  "[T]he 'availability of compulsory process for unwilling witnesses' weighs significantly in favor of" a foreign forum when "[m]ost of the individuals and entities identified in the Complaint reside in . . . foreign jurisdictions outside the Court's subpoena power and cannot be compelled to give evidence in this case."  *Banculescu v. Compania Sud Americana De Vapores, SA*, No. 11 Civ. 2681, 2012 WL 5909696, at *8 (S.D.N.Y. Nov. 26, 2012).

Third, the cost of willing witnesses' attendance is considerable and includes the cost of transportation from Latvia and translation services.  "The expense of forcing Defendant's

9

employees to travel to New York for trial also weighs in favor of the [foreign] forum." *Hyundai Merch. Marine Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 14 Civ. 7965, 2015 WL 7758876, at *6 (S.D.N.Y. Dec. 1, 2015).

Golden Horn argues that Norvik's delay in bringing this motion—filed more than two and half years from the Complaint—undermines Norvik's assertions that this forum is inconvenient. (Dkt. No. 90 at 8.) The Second Circuit has held, however, that dismissal on *forum non conveniens* grounds is not improper where "[t]he traditional public and private interest factors weigh heavily" in favor of a foreign forum despite the fact that the parties had "conducted significant discovery for three years." *Alfadda v. Fenn*, 159 F.3d 41, 45, 48 (2d Cir. 1998). The Court finds that Norvik's delay does not tip the balance in Golden Horn's favor.

Accordingly, the private interest factors favor dismissal.

### 2. Public Interest Factors

The "public interest" factors include "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the 'local interest in having localized controversies decided at home;' and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *DiRienzo*, 294 F.3d at 31 (quoting *Gilbert*, 330 U.S. at 508–09)).

First, administrative difficulties related to court congestion do not appear to favor either party. "[W]hile this district is one of the country's busiest . . . there is no basis to assume how congested or not the relevant [foreign] courts are." *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 774 (S.D.N.Y. 2006) (citations omitted).

As to the third factor (there is no jury demand in this case, so the second factor is irrelevant) New York has next to no interest in this dispute. This case centers on whether a

Latvian company acted—in Latvia—in such a way that its corporate protections should be disregarded. Latvia has a more compelling interest in the resolution of this dispute than New York.

Finally, there is a likelihood that this case will involve the application of foreign law.[4] In *Lauritzen v. Larsen*, 345 U.S. 571 (1953), the Supreme Court set out a multi-factor test to perform a maritime choice-of-law analysis. When addressing alter-ego claims under admiralty jurisdiction, the Court employs the maritime choice-of-law analysis set forth in *Lauritzen*. *See Blue Whale*, 722 F.3d at 498 ("[W]hen parties properly invoke admiralty jurisdiction, courts apply federal maritime choice-of-law rules.").

The *Lauritzen* test requires a court to consider seven factors to determine whether foreign law should apply: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. 345 U.S. at 583–92. In this case, the first, fourth and fifth factors favor the application of Latvian law. The second and third favor neither party—the law of the Vessel's flag is Belize and Golden Horn is a

---

[4] Golden Horn argues that a choice of law analysis should precede resolution of a motion to dismiss pursuant to *forum non conveniens*, and that if U.S. law is found to apply, the Court should retain jurisdiction. (Dkt. No. 90 at 1 (citing Thomas J. Schoenbaum, Admiralty & Maritime Law § 21-12 (5th ed. 2011)).) The treatment of a choice-of-law analysis as a prerequisite to dismissal pursuant to *forum non conveniens* is contrary to more recent decisions in this Circuit—which this Court follows—that treat the potential application of foreign law as merely one of many factors to be considered. *See, e.g., LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447, 463 (S.D.N.Y. 2007) ("Courts often do not decide choice of law issues when performing a *forum non conveniens* analysis, but sometimes they do undertake the analysis. The mere likelihood of the application of foreign law weighs in favor of dismissal." (citations omitted)); *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 387 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002) ("[C]ourts have a legitimate interest in avoiding the difficulty with questions of conflicts of law and the application of foreign law.").

Russian entity. The sixth and seventh factors favor Norvik: Latvia is an accessible forum and the law that presumably governs Norvik's corporate separateness is Latvian law.

Golden Horn argues that U.S. federal common law governs this dispute. It points to this Court's prior opinion, in which the Court noted that "[f]ederal common law governs a plaintiff's attempt to hold a parent company liable in an admiralty case," *Golden Horn Shipping*, No. 14 Civ. 2168, 2014 WL 5778535, at *2, as well as to the Second Circuit's opinion in *Blue Whale*.

First, the law of the case doctrine does not apply to the current situation because the parties have not previously contested this issue on the merits. Under the law of the case doctrine, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) (internal quotation marks omitted)). The Court's prior opinion applied federal common law and determined that Golden Horn successfully made out a prima facie case that Volans was Norvik's alter ego. *Golden Horn Shipping*, No. 14 Civ. 2168, 2014 WL 5778535, at *2–6. However, the parties did not dispute, and the Court did not apply, the *Lauritzen* factors to this case. The Court declines to apply the law of the case doctrine to an issue that the parties have not previously briefed and argued in full.

Second, in *Blue Whale* the Second Circuit held that federal maritime choice-of-law analysis—that is, application of the *Lauritzen* factors—determines the relevant substantive law to apply when deciding a Rule B attachment case. *Blue Whale*, 722 F.3d at 495–500. But the Court explicitly "reject[ed] the proposition . . . that federal common law *automatically* governs the alter-ego claim." *Id.* at 496. In that case, applying *Lauritzen*, the decision to apply U.S. maritime law was in part due to the "unavailability of an alternative forum, and the absence of a

dominant foreign choice of law." *Blue Whale*, 722 F.3d at 500. Here, Latvia is an adequate alternative forum and has a stronger connection to this dispute than any other forum. As described above, the *Lauritzen* factors appear to favor application of Latvian law—not federal common law—in this case.

In any event, the Court need only conclude that there is a likelihood that foreign law applies for the purposes of this motion. *See LaSala*, 514 F. Supp. 2d at 463 (S.D.N.Y. 2007) (holding that "the mere likelihood of the application of foreign law weighs in favor of dismissal" and collecting cases).

"Having considered all of the above, the district court should dismiss the action for *forum non conveniens* 'only if the chosen forum is shown to be genuinely inconvenient and the [alternate] forum is significantly preferable.'" *Chigirinskiy*, 2015 WL 1454646, at *8 (S.D.N.Y. Mar. 31, 2015) (quoting *Iragorri*, 274 F.3d at 74–75). Remaining "mindful that forum-shopping considerations may motivate a defendant to press for dismissal as much as they drive a plaintiff to resist it," *id.*, the Court concludes that dismissal is warranted.

## III. Conclusion

For the foregoing reasons, Norvik's motion to dismiss pursuant to *forum non conveniens* is GRANTED, subject to the conditions that a Latvian court is willing to hear the case and that defendants waive any jurisdictional defenses and any defenses based upon statute of limitations that may have arisen since the filing of the case in this forum. The remaining pending motions are DENIED as moot.

This Court will retain jurisdiction to enforce any Latvian judgment that Golden Horn might obtain against Norvik against the funds attached here by Golden Horn. Therefore, this action is hereby STAYED pending resolution of the Latvian proceedings.

The parties are directed to provide the Court a status update within ninety days of the date of this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 63, 67, 72, and 85.

SO ORDERED.

Dated: August 16, 2017
      New York, New York

                                     J. PAUL OETKEN
                               United States District Judge